HARRY ZWICK AND ANOTHER v. SECURITY STATE BANK OF RED WING AND OTHERS.[1]

June 10, 1932.

No. 28,921.

*Albert Mohn,* for appellants.
*Bentley & Christianson,* for respondents.

STONE, J.

In this case there was a decision for plaintiffs, and an order appointing W. C. Christianson, Esq., of counsel for plaintiffs, a receiver "of all the assets, property and effects of said Security Bank

[1]Reported in 243 N. W. 140.

and Trust Company" with full powers to collect its assets and distribute them "in dividends to the stockholders" after paying expenses of the receivership. From that order defendants (other than defendant Albert Johnson) appeal.

Security Bank and Trust Company of Red Wing, Minnesota, is a state banking corporation. We shall refer to it as the bank. January 19, 1929, it absorbed, by consolidation, the Red Wing State Bank. In February, 1930, it went out of the banking business and since has been engaged exclusively in liquidating its own affairs. Its liabilities, with its approved assets, were taken over by a new and successor institution. Having no creditors, its stockholders are the only ones financially interested in either process or outcome of liquidation. There is a board of ten directors and a liquidating committee of three. Plaintiffs, owning between them, it is said, 31 of the 2,000 shares of the capital stock, sue as minority stockholders for the appointment of a receiver to wind up the corporation. The purpose of their stockholders' bill is that of a small minority to oust the majority stock control from management by the substitution, in place of directors and liquidating committee chosen by the stockholders in the usual manner, of a receiver who has heretofore had no connection with the business.

Complying with an order of court made before trial, the liquidating committee submitted a long, complete, and detailed report of the status of the corporation, its property at the time being, and the doings of the liquidating committee to date of the report. The assets, consisting almost entirely of bills receivable, were listed with comments as to many of the items, showing what attempts had been made to collect, condition of the debtor or the security or both, explaining failure to collect, and indicating somewhat the prospect for collection and the present value of the claim. Among the bills receivable we observe a $500 note against plaintiff Holset, dated as far back as October 7, 1929, payable on demand, with the notation: "Nothing paid. Says he will pay note out of stock held in the Security Bank and Trust Co. when liquidated." Apparently the note is valued at 50 cents on the dollar.

From the beginning the books and records of the corporation have been open to inspection by stockholders. Since July 15, 1930, the liquidating committee has consisted of defendants Krise, Erb, and Josephson. Defendant W. H. Putnam, formerly president of the bank, is employed by the committee as the one principally in charge of liquidation. Assisting him is one Davis, not a party to this action. The decision below not only makes no criticism of the management by directors or liquidating committee, or any member of either, or any employe, but also finds explicitly that defendant Putnam "is thoroughly familiar with the details of the business and is a person fully competent to transact and care for the same and that said H. W. Davis is a person skilled in collection matters and is a competent person to transact such liquidation." In that connection, it is found "that the present expense of said liquidating is moderate and reasonable and that there has been no dissipation of funds."

There being no other possible ground, the appointment of the receiver was put upon the "conflicting interests" which the evidence developed along these lines. Among the bills receivable are notes, aggregating (according to the brief for respondents) $106,805, upon certain of which some of the directors and liquidating committee, and Mr. Putnam, are liable as makers or indorsers. Of this list, one item of $30,000 can be put aside at once. It is a note of the Watford Land Company, organized before the bank went out of business, to take over and liquidate lands which the bank had been carrying as "other real estate," and which in the interests of good banking it was necessary to dispose of. Another item is a $32,500 note of the Red Wing Advertising Company, complained of now because defendant Putnam is treasurer and two other director defendants, Rasmussen and Swanson, are directors of the maker. This note is the result of a line of credit extended by the bank while it was a going concern. Since then it has been increased by reason of the joint action of all the banks in Red Wing. It may be slow or of little value, but to suggest it as evidence of mismanagement by defendants or any of them is futile. In the remaining $44,805

of bills receivable, there are liabilities against but three of the ten directors, and only one of the liquidating committee, defendant Erb.

There is here no such amount or kind of conflicting interest as to justify the ousting of the management, chosen by the stockholders, and the substitution of any outsider, however competent and well-intentioned. The property is still that of the stockholders. Until injury to the corporation, and through corporation to stockholders, arising from something in the nature of fraud or mismanagement, is made to appear, or at least to be impending or probable, such conflicting interests as are present here. are not sufficient to justify a receivership. We emphasize the fact that both on the board of directors and the liquidating committee the majority are not debtors to the bank. We emphasize also and again that the decision below acquits defendants, collectively and individually, of mismanagement, favoritism to debtors, improper delay, excessive expenditure, and all else in the way of malfeasance or misfeasance.

The argument on both sides, as well as the decision below, rather forces the conclusion that there is here no need for summary relief, and certainly no "imminent danger of loss" within the rule of Owens v. J. L. Owens Co. 161 Minn. 6, 9, 200 N. W. 845. There was no ground therefore for the appointment of a receiver.

We recognize that plaintiffs invoke, as they may, equitable rather than statutory grounds. G. S. 1923 (2 Mason, 1927) § 9389; N. W. Nat. Bank v. Mickelson-Shapiro Co. 134 Minn. 422, 159 N. W. 948; 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 8248. But equity and statute together fail to justify the appointment of a receiver here. The remedy is too drastic to be resorted to simply because plaintiffs are dissatisfied and think that they or their counsel might do a better job than is being done by those chosen by the large majority of the shareholders. Receiverships are notoriously expensive and rightly considered a last resort. Frequently they have been hurtful rather than helpful to all concerned, save only the receivers and their counsel. There may be cases where the existence of conflicting interests will justify a receivership. But the conflict of interests must show to the satisfaction of the court that there is im-

312

minent danger to creditors and/or stockholders. Talling v. Elbs, (Sup.) 120 N. Y. S. 693, much relied upon by plaintiffs, was such a case. For additional authorities see annotations 43 A. L. R. 242 and 61 A. L. R. 1212.

No ground appearing for the appointment of a receiver in this action, the order appealed from must be reversed.

So ordered.